Nathan D. Meyer (020583)
ndm@jaburgwilk.com
Micalann C. Pepe (029053)
mcp@jaburgwilk.com
**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Attorneys for Plaintiff Pharmacists Mutual Insurance Company

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pharmacists Mutual Insurance Company,<br><br>   Plaintiff,<br><br>v.<br><br>John, Nancy, and Zach Bryan; and Jane, Jack, and John Roe,<br><br>   Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Pharmacists Mutual Insurance Company ("Pharmacists Mutual") alleges the following:

**PARTIES, JURISDICTION & VENUE**

1. Pharmacists Mutual is an Iowa corporation, with its principal place of business in Algona, Iowa.

2. John, Nancy, and Zach Bryan (the "Bryan Defendants") are residents of the State of Arizona.

3. Defendants Jane, Jack and John Roe (the "Roe Defendants") are also residents of the State of Arizona.[1]

4. Complete diversity exists between Plaintiff, a citizen of Iowa, and Defendants, citizens of Arizona.

---

[1] John Roe, Jack Roe, and Jane Roe are the fictitious names of the Underlying Plaintiffs used in the Underlying Complaint. John Roe was a minor at the time of the events alleged in the Underlying Complaint. Jack Roe is the biological brother of John Roe and was also a minor at the time of the events alleged in the Underlying Complaint. Jane Roe is the biological mother and guardian of John Roe.

16372-16372-00016\NDM\JPT\2839930.1

5. Pharmacists Mutual brings this action under 28 U.S.C. § 2201 and 2202 for declaratory relief regarding its obligations under the insurance policies described below (the "Policies").

6. A justiciable controversy exists between Pharmacists Mutual, the Bryan Defendants, and the Roe Defendants regarding whether Pharmacists Mutual owes a duty to defend and indemnify its insureds, the Bryan Defendants, arising from claims asserted by the Roe Defendants against the Bryan Defendants in an underlying lawsuit filed in Maricopa County Superior Court, case CV2017-008761 (the "Underlying Lawsuit").

7. Pharmacists Mutual is currently defending the Bryan Defendants in the Underlying Lawsuit under a reservation of rights.

8. The Policies state cumulative limits of $1.3 million, the Roe Defendants recently demanded the $1.3 million policy limits from the Bryan Defendants, and the Bryan Defendants recently demanded that Pharmacists Mutual pay the $1.3 million policy limits to settle the Underlying Lawsuit.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because complete diversity exists, and the amount in controversy exceeds $75,000.

10. This Court is the proper venue, under 28 U.S.C. § 1391, because all Defendants reside in the District of Arizona and a substantial part of the events from which the claims in this Complaint arose occurred in the District of Arizona.

**GENERAL ALLEGATIONS**

**The Underlying Lawsuit**

11. The Underlying Lawsuit arises from alleged sexual contact between Defendant Zach Bryan ("Zach"), who was 15 years old at the time of the alleged sexual contact, and John Roe, who was under 15 years old at the time of the alleged sexual contact. *See generally* Exh. 1, Underlying Comp. (6/6/17).

12. The Underlying Complaint alleges that, on or about January 30, 2009, Zach "engaged in sexual contact with John Roe, a child under fifteen years of age,

which was a Class 3 felony and a dangerous crime against children, in violation of A.R.S. § 13-1405." *Id.* ¶¶ 9-10.

13. The Underlying Complaint alleges that, between August 1 and November 13, 2010, Zach repeatedly engaged in sexual contact with John Roe on separate occasions by "putting his penis into John Roe's mouth and anus" which was a Class 3 felony and a dangerous crime against children, in violation of A.R.S. § 13-1405. *Id.* ¶ 11.

14. The Underlying Complaint alleges that, on or about July 11, 2011, Zach pled guilty to the above alleged criminal conduct and other similar conduct. *Id.* ¶ 12.

15. The Underlying Complaint alleges that Zach engaged in the sexual contact described above "at the Bryan residence while Jack Roe was there with his brother" and while Nancy Bryan ("Zach's Mother") was the only adult on premises. *Id.* ¶¶ 13-14.

16. The Underlying Complaint alleges the following claims against the following Bryan Defendants:

   a. against John and Nancy Bryan ("Zach's Parents"): negligence, negligent supervision, and negligent inflection of emotional distress; and

   b. against Zach: negligence, negligent infliction of emotional distress, assault and battery, intentional infliction of emotional distress, and punitive damages. *See generally* Exh. 1, Underlying Comp.

**The Presentence Investigation**

17. During Pharmacist Mutual's investigation, it obtained a copy of the "Presentence Investigation" in Zach's criminal case. *See generally* Exh. 2, Presentence Investigation (redacted).

18. On December 31, 2010, Jane Roe contacted police to report John Roe was molested by Zach. *Id.* at 1.

19. On January 6, 2011, John Roe was interviewed by detectives. *Id.* at 1.

20. During the January 6, 2011 interview, John Roe stated Zach "raped" him, on January 30, 2009, when Zach put his penis into John Roe's mouth. *Id.* at 1.

3

21. John Roe was nine years old on January 30, 2009. *Id.*

22. During the January 6, 2011 interview, John Roe also told detectives that the second and third offenses occurred between August 1, 2010, and November 13, 2010, during which Zach again inserted his penis into John Roe's mouth and/or anus. *Id.*

23. On January 7, 2011, Jane Roe provided detectives with an audio recording of a confrontation call between John Roe and Zach that occurred January 6, 2011. *Id.*

24. During the January 6, 2011 call between John Roe and Zach, "it appears [Zach] indicates admission of oral and anal sex between him and [John Roe]." *Id.*

25. On January 7, 2011, the authorities took Zach into custody. *Id.*

26. During January 7, 2011 questioning, Zach "admitted to putting his penis in [John Roe's] mouth on more than one occasion." *Id.*

27. During January 7, 2011 questioning, Zach also "admitted to putting his penis inside [John Roe's] anus on at least two occasions, but agreed it was possible it occurred more than twice." *Id.*

### The Guilty Pleas

28. During Pharmacist Mutual's investigation, it obtained a copy of the Minute Entry regarding Zach's guilty pleas. *See generally* Exh. 3, Minute Entry (8/11/11).

29. Zach pled guilty to three counts of "Attempted Sexual Conduct with a Minor, Dangerous Crimes Against Children." *Id.* at 1, 2.

30. "Attempted Sexual Conduct with a Minor, Dangerous Crimes Against Children" is a Class 3 Felony. *Id.* at 2.

31. The date of the offenses for which Zach pled guilty were January 30, 2009; on or between August 1, 2010, and November 13, 2010; and on or between August 1, 2010, and November 13, 2010. *Id.*

4

### The Policies

32. Pharmacists Mutual issued the following Homeowners Policies to John Bryan ("Zach's Father"):

    a. Homeowners Policy 0044599 07 (effective 4/29/08 – 4/29/09),

    b. Homeowners Policy 0044599 08 (effective 4/29/09 – 4/29/10),

    c. Homeowners Policy 0044599 09 (effective 4/29/10 – 4/29/11), and

    d. Homeowners Policy 0044599 10 (effective 4/29/11 – 4/29/12).

33. The Homeowners Policies provided various coverages, but the pertinent coverage is Coverage L – Personal Liability, with limits of $300,000 per occurrence.

34. Pharmacists Mutual issued the following Umbrella Policies to Zach's Father:

    a. Umbrella Policy 0044559 08 (4/29/08 – 4/29/09),

    b. Umbrella Policy 0044559 09 (4/29/09 – 4/29/10), and

    c. Umbrella Policy 0044559 10 (4/29/10 – 4/29/11).

35. The Umbrella Policies' limit is $1 million per occurrence, with a $1,000 retained limit.

### The Homeowners Policy Provisions

36. The Insuring Clause of Personal Liability Coverage in the Homeowners Policies state:

**PRINCIPAL LIABILITY COVERAGES**

    1. **Coverage L - - Personal Liability - - "**We" pay, up to the "limit" that applies, all sums for which an "insured" is legally liable because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies.

    We will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" cause by an "occurrence" to which this coverage applies.

37. The Bryan Defendants are each insureds under the Homeowners Policies.

38. The Homeowners Policies issued to the Insureds include a Severability

provision, which states: "The Liability Coverages provided by this policy apply separately to each 'insured', but this does not increase the 'limit' that applies for any one 'occurrence'."

39. The Homeowners Policies include the following definitions:

> 5. "Bodily injury" means bodily harm to a person and includes sickness, disease, or death. This also includes required care and loss of services.
>
> However, "bodily injury" does not mean bodily harm, sickness, disease, or death that arises out of mental or emotional injury, suffering, or distress that does not result from actual physical injury to a person.

\*\*\*

> 13. "Insured" means:
>
>   a. "you"[2]
>
>   b. "your" relatives if residents of "your" household:
>
>   c. "your" relatives under the age of 25 years who:
>
>     1) are financially dependent upon "you";
>
>     2) are students enrolled in school full time, as defined by the school; and
>
>     3) were residents of "your" household just before moving out to attend school.

\*\*\*

> 17. "Occurrence" means an accident, including repeated exposures to similar conditions, that results in "bodily injury" or "property damage" during the policy period.

40. The Personal Liability Coverage in the Homeowners Policies include the following exclusions:

**1. Exclusions That Apply to Coverage L And Coverage M –** Coverage L and Coverage M do not apply to:

\*\*\*

---

[2] The Homeowners Policies define the terms "you" and "your" to mean the "person or persons named as the insured on the "declarations". This includes "your" spouse if a resident of "your" household."

6

      i.    "bodily injury" or "property damage" that is:

          1)    expected by, directed by, or intended by an "insured";
          2)    the result of a criminal act of an "insured"; or
          3)    the result of an intentional and malicious act by or at the direction of an "insured".

      This exclusion applies even if the "bodily injury" or "property damage":

          1)    that occurs is different than what was expected, directed, or intended; or
          2)    is suffered by persons, entities, or property not expected, directed, or intended.

      However, this exclusion does not apply to "bodily injury" or "property damage" that arises out of the use of reasonable force by an "insured" to protect people or property.

      ***

      k.    "bodily injury" or "property damage" that arises out of sexual molestation.

      l.    "bodily injury" or "property damage" that arises out of physical or mental abuse.

41.    The Homeowners Policies also include a "Punitive or Exemplary Damages Exclusion Endorsement," HO 1347 01 06:

> This policy is amended to include the following "terms". All other "terms" of the policy apply, except as amended by this endorsement.
>
> This policy does not apply to a claim or indemnification for "punitive or exemplary damages". "Punitive or exemplary damages" means those damages imposed to punish a wrongdoer and to deter others from similar conduct.
>
> If a suit seeking both compensatory and "punitive or exemplary damages" is brought against an "insured" for an "occurrence" *covered* by this policy, "we" will provide defense coverage.
>
> "We" will not pay for any costs, interest, or damages attributable to "punitive or exemplary damages".

### The Homeowners Policies' Criminal Act Exclusion
### Precludes Coverage for Zach

42. The Criminal Act Exclusion in the Homeowners Policies precludes coverage for "bodily injury" that results from an insured's criminal act

43. The "bodily injury" alleged in the Underlying Complaint, i.e. the sexual molestation of John Roe, resulted from a Class 3 Felony.

44. On August 11, 2011, Zach pled guilty to three counts of Attempted Sexual Conduct with a Minor, a Dangerous Crime Against Children, for the same three offenses (January 30, 2009, and between August 1, 2010 and November 13, 2010) alleged by the Roe Defendants in the Underlying Complaint.

45. Thus, the Criminal Act Exclusion in the Homeowners Policies precludes coverage for Zach.

### The Homeowners Policies' Sexual Molestation Exclusion
### Precludes Coverage for Zach

46. The Sexual Abuse Exclusion in the Homeowners Policies precludes coverage for "bodily injury" "arising out of sexual molestation."

47. Arizona courts and statutes interpret "sexual molestation" to include "sexual contact," which includes any direct or indirect touching, fondling, or manipulating of any part of the genitals or anus by any part of the body.

48. During January 7, 2011 questioning, Zach "admitted to putting his penis in [John Roe's] mouth on more than one occasion" and "admitted to putting his penis inside [John Roe's] anus on at least two occasions…" Exh. 2, Presentence Investigation at 1.

49. The only bodily injury alleged in the Underling Complaint was Zach's "sexual contact" with John Roe.

50. The facts alleged in the Underlying Complaint and the facts established in the Presentence Investigation and Zach's guilty pleas demonstrate the "bodily injury" alleged in the Underlying Complaint arises out of sexual molestation.

51. Thus, the Sexual Abuse Exclusion in the Homeowners Policies also precludes coverage for Zach.

### The Homeowners Policies' Intentional Acts Exclusion

52. The Intentional Acts Exclusion in the Homeowners Policies precludes coverage for bodily injury "expected or intended" by the insured or bodily injury that is "the result of an intentional and malicious act by or at the direction of an 'insured'".

53. The Homeowners Policies specify that the Intentional Act Exclusion applies even if the resulting "bodily injury" was different than expected or intended.

54. The Underlying Complaint alleges that Zach "intended" his conduct. *See* Exh. 1, Underlying Comp. ¶¶ 30, 34.

55. Zach pled guilty to Attempted Sexual Conduct with a Minor, A.R.S. § 13-405, which requires "intentionally or knowingly engaging" in sexual conduct.[3]

56. Thus, to the extent the Underlying Complaint alleges, or the facts establish, that the alleged bodily injury resulted from intentional conduct, the Intentional Acts Exclusion in the Homeowners Policies preclude coverage for Zach.

### The Homeowners Policies' Physical or Mental Abuse Exclusion

57. The Physical or Mental Abuse Exclusion precludes coverage for "bodily injury" arising out of physical or mental abuse.

58. Arizona defines abuse to include "sexual conduct" with a minor. A.R.S. § 8-201(2)(a).

59. Arizona defines "sexual contact" to include any direct or indirect touching, fondling, or manipulating of any part of the genitals or anus by any part of the body. A.R.S. § 13-1401(3).

60. The Underlying Complaint alleges Zach "repeatedly engaged in sexual contact" with John Roe. *See* Exh. 1, Underlying Comp. ¶¶13, 14.

---

[3] A.R.S. § 13-105(10)(a)-(b) defines "intentionally" or "with intent to" as "a person's objective is to cause that result or to engage in that conduct" and defines "knowingly" as "a person is aware or believes that the person's conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission."

9

61. Thus, to the extent the Underling Complaint alleges, or the facts establish, that the alleged bodily injury arose out of physical or mental abuse, the Physical and Mental Abuse Exclusion in the Homeowners Policies precludes coverage for Zach.

### The Homeowners Policies' Sexual Molestation Exclusion Precludes Coverage for the Derivative Claims Against Zach's Parents

62. The Sexual Abuse Exclusion precludes coverage for any "bodily injury" "arising out of sexual molestation."

63. In Arizona, negligence claims deriving from an excluded activity are excluded.

64. The Underlying Lawsuit alleges three claims against Zach's Parents: negligent supervision, negligence, and negligent infliction of emotional distress.

65. The alleged harm or bodily injury at issue and the basis for each of these claims is Zach's alleged sexual molestation/abuse of John Roe.

66. The Underlying Lawsuit alleges no other harm or bodily injury caused by the alleged negligence of Zach's parents.

67. Thus, the Sexual Molestation Exclusion in the Homeowners Policies precludes coverage for Zach's Parents.

### The Umbrella Policies' Provisions

68. The Insuring Clause of Umbrella Policies state:

**PRINCIPAL COVERAGE**

"We" pay, up to "our" "limit", all sums for which an "insured" is liable by law because of "bodily injury", "personal injury", or "property damage" to which this Personal Umbrella Liability Coverage applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Defense Coverage.

Subject to the Exclusions, this insurance applies only to:

1. "bodily injury" and "property damage" that is caused by an "occurrence"; and

2. "personal injury" arising from an offense committed during the policy period.

\*\*\*

**DEFENSE COVERAGE**

\*\*\*

2. "We have the duty to defend any claim or "suit" seeking damages to which this insurance applies, but only with respect to damages:

   a. covered by "underlying insurance" or any other valid and collectible insurance available to the "insured" except for exhaustion of a "limit" by the payment of losses; or

   b. not covered by "underlying insurance" or any other valid and collectible insurance available to the "insured." However, "we" have no duty to defend a claim or "suit" seeking damages for an amount that does not exceed the Retained Limit shown on the "declarations."

69. The Bryan Defendants are each insureds under the Umbrella Policies.

70. The Umbrella Policies define "bodily injury" differently that the Homeowners Policies. The Umbrella Policies state:

3. "Bodily injury" means bodily harm to a person and includes sickness, disease, or death. This also includes required care and loss of services.

   "Bodily injury" does not mean bodily harm, sickness, disease or death that arises out of:

   a. a communicable disease;

   b. the actual, alleged, or threatened sexual molestation of a person;

11

      c.      mental or emotional injury, suffering, or distress that does not result from physical injury;

      d.      physical abuse;

***

11.    "Occurrence" means an accident, including repeated exposures to similar conditions, that results in "bodily injury" or "property damage" during the policy period.

71.    The Umbrella Policies include the following exclusions:

This Personal Umbrella Liability Coverage does not apply to:

***

9.    "bodily injury" or "property damage";

      a.      that is expected by, directed by, or intended by an "insured";

      b.      that is the result of a criminal act of an "insured"; or

      c.      that is the result of an intentional and malicious act by or at the direction of an "insured."

This exclusion applies even if the "bodily injury" or "property damage" that occurs is different than what was expected by, directed by, or intended by the "insured"; or is suffered by someone other than the person or persons expected by, directed by, or intended by the "insured". However, this exclusion does not apply to "bodily injury" or "property damage" that arises out of the use of reasonable force to protect people or property.

72.    The Umbrella Policies also include an "Exclusion – Punitive Damages" endorsement, UM 0135 01 00:

**EXCLUSION – PUNITIVE DAMAGES**

This policy does not apply to a claim or indemnification for punitive or exemplary damages. If a suit seeking both compensatory and punitive or exemplary damages is brought against an "insured" for an "occurrence" covered by this policy, "we will provide defense coverage.

"We" will not pay for any costs, interest, or damages attributable to punitive or exemplary damages.

All other "terms" of this policy apply.

**The Underlying Complaint Does Not Allege "Bodily Injury"
Required to Trigger Coverage Under the Umbrella Policies**

73. A complaint triggers coverage under the Umbrella Policies if it alleges "bodily injury."

74. The Umbrella Policies' definition of "bodily injury" excludes bodily harm that arises out of sexual molestation.

75. The only bodily harm alleged in the Underlying Complaint arises out Zach's alleged sexual molestation of John Roe.

76. The Umbrella Policies' definition of "bodily injury" excludes mental or emotional injury, suffering, or distress that does not result from physical injury.

77. The only harm alleged in the Underlying Complaint to Jack Roe is emotional harm arising from Zach's alleged sexual molestation of John Roe.

78. Thus, the Underlying Complaint does not allege "bodily injury" and consequently does not trigger coverage under the Umbrella Policies.

**The Underlying Complaint Does Not Allege an "Occurrence"
Required to Trigger Coverage Under the Umbrella Policies**

79. The Underlying Complaint triggers coverage under the Umbrella Policies if it alleges "bodily injury" caused by "an "occurrence."

80. The Umbrella Policies define "occurrence" as an "accident…that results in 'bodily injury' or 'property damages' during the policy period."

81. The Umbrella Policies' definition of "bodily injury" excludes bodily harm that arises out of sexual molestation.

82. The only bodily harm alleged in the Underlying Complaint arises out Zach's alleged sexual molestation of John Roe.

83. Thus, the Underlying Complaint does not allege an "occurrence" and consequently does not trigger coverage under the Umbrella Policies.

**The Umbrella Policies' Criminal Act Exclusion
Precludes Coverage for Zach**

84. The Criminal Act Exclusion in the Umbrella Policies precludes coverage for "bodily injury" that is the result of a criminal act of an insured.

85. The "bodily injury" alleged in the Underlying Complaint, i.e. the sexual molestation of John Roe, resulted from a Class 3 Felony.

86. On August 11, 2011, Zach pled guilty to three counts of Attempted Sexual Conduct with a Minor, a Dangerous Crime Against Children, for the same three offenses (January 30, 2009, and between August 1, 2010 and November 13, 2010) alleged by the Roe Defendants in the Underlying Complaint.

87. Thus, the Criminal Act Exclusion in the Umbrella Policies precludes coverage for Zach.

### The Umbrella Policies' Expected or Intended Exclusion

88. The Expected or Intended Exclusion in the Umbrella Policies precludes coverage for bodily injury "expected or intended" by an insured.

89. The Umbrella Policies also specify that the Expected or Intended Exclusion applies even if the resulting "bodily injury" was different than expected or intended.

90. The Underlying Complaint alleges that Zach "intended" his conduct. *See* Exh. 1, Underlying Comp. ¶¶ 30, 34.

91. Zach pled guilty to Attempted Sexual Conduct with a Minor, A.R.S. § 13-405, which requires "intentionally or knowingly engaging" in sexual conduct. A.R.S. § 13-105(10(a-b).

92. Thus, to the extent the Underlying Complaint alleges, or the facts establish, bodily injury expected or intended by Zach, the Expected or Intended Exclusion in the Umbrella Policies preclude coverage for Zach.

### The Bryan Defendants Have Not Disputed Pharmacist Mutual's Coverage Analysis

93. In an August 16, 2017 letter, Pharmacists Mutual informed the Bryan Defendants that the claims of the Roe Defendant were likely not covered, but

Pharmacists Mutual would continue to provide a defense to the Underlying Lawsuit under a full reservation of rights.

94. In the same letter, Pharmacists Mutual invited the Bryan Defendants to inform it immediately if they felt Pharmacists Mutual was mistaken as to any facts or allegations discussed in the letter.

95. The Bryan Defendants have not informed Pharmacists Mutual that it was mistaken about any facts or allegations discussed in the August 16, 2017 letter.

## CLAIM FOR RELIEF
### Declaratory Judgment

96. Pharmacists Mutual realleges paragraphs 1-95 as if fully set forth in this Claim for Relief.

97. An actual controversy has arisen between Pharmacists Mutual, the Bryan Defendants, and the Roe Defendants regarding whether Pharmacists Mutual owes a duty to defend the Bryan Defendants in the Underlying Lawsuit.

98. An actual controversy has arisen between Pharmacists Mutual, the Bryan Defendants, and the Roe Defendants regarding whether Pharmacists Mutual owes a duty to indemnify the Bryan Defendants for the claims in the Underlying Lawsuit.

99. Pharmacists Mutual seeks a judicial determination and declaration of its rights and duties under the Policies.

100. Pharmacists Mutual is entitled to a judicial declaration that it owes no duty under the Policies to defend the Bryan Defendants in the Underlying Lawsuit.

101. Pharmacists Mutual is entitled to a judicial declaration that it owes no duty under the Policies to indemnify the Bryan Defendant for the claims in the Underlying Lawsuit.

102. Pharmacists Mutual is entitled to other such relief as the Court deems just and equitable.

103. This action arises out of contracts, the Policies.

104. If Pharmacists Mutual is the successful party, then the Court may award Pharmacists Mutual costs and attorney fees under A.R.S. §§ 12-341 and 12-341.01.

**PRAYER FOR RELIEF**

WHEREFORE, Pharmacists Mutual prays for judgment against all Defendants as follows:

1. A judicial determination declaring the Policies do not provide coverage for the Roe Defendants' claims.

2. A judicial determination declaring Pharmacists Mutual owes no duty to defend the Bryan Defendants from the Underlying Lawsuit.

3. A judicial determination declaring Pharmacist Mutual owes no duty to indemnify the Bryan Defendants from the claims in the Underlying Lawsuit.

4. All taxable costs and attorney fees, under A.R.S. §§ 12-341 and 12-341.01.

5. And, all such other relief the Court may deem just and proper.

DATED this 2nd day of October, 2017.

**Jaburg & Wilk, P.C.**

*/s/ Nathan D. Meyer*
Nathan D. Meyer
Micalann C. Pepe
Attorneys for Pharmacists Mutual